UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DEBRA BOHANNON ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:12-CV-2 |
| v. ) | |
| ) | Collier/Lee |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

Plaintiff Deborah Bohannon ("Plaintiff") brought this action on January 4, 2012, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. The Court referred the matter to United States Magistrate Judge Susan K. Lee, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R&R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 12) and Defendant's motion for summary judgment (Court File No. 14). The magistrate judge filed an R&R (Court File No. 20) recommending the decision of the Commissioner be affirmed, Plaintiff's motion for judgment on the pleadings be denied (Court File No. 12), Defendant's motion for summary judgment be granted (Court File No. 14), and the case be dismissed. Plaintiff timely filed an objection to the R&R (Court File No. 21). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 20).

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Medical History

Plaintiff was a thirty-three-year-old woman at the time of the hearing. In 2005 she was involved in a car accident, which she claims left her disabled by 2007. Plaintiff was not hospitalized after the wreck, but stated her injuries worsened over time. Before her injuries, Plaintiff worked as a waitress, cook, cashier, and warehouse employee. Plaintiff has a daughter, who was eight-years-old at the time of the hearing, and lives with a roommate who was primarily responsible for the household chores.

Plaintiff claimed disability due to fibromyalgia, eczema on her hands, nerve damage due to bulging discs in her neck and back, and bipolar disorder. She also had difficulties with Chronic Obstructive Pulmonary Disease ("COPD"). Some of the medication she takes for these disorders causes migraine headaches about twice a week. She had been seeing Dr. Nabil Cyleman for nearly three years at the time of the hearing. Shortly after she started seeing Dr. Cyleman, he referred her to Dr. Thomas Miller. She began seeing Drs. Miller and Donald Chipman with Specialists in Pain Management in April 2008, who ordered an MRI. The MRI showed minimal bulges in her posterior discs. Over the summer of 2008, Plaintiff received injections to relieve her pain. Her treatment was subsequently discontinued at Specialists in Pain Management because she tested positive for Darvocet, which they had not prescribed.

Plaintiff then began seeing Dr. Cyleman again, and was still complaining of pain in her back and neck. Dr. Cyleman referred her to another doctor, this time to Dr. Dennis Ford. Before she

---

[1] The factual and procedural history of this case is thoroughly addressed in the R&R. The facts as related by the magistrate judge have not been disputed and the Court will not seek to repeat every detail of the factual background. The Court will, however, provide a relevant summary.

2

began seeing Dr. Ford, Dr. Joe Allison completed a Physical Residual Functional Capacity Assessment ("PRFC"). He concluded she could occasionally lift or carry fifty pounds and could frequently lift or carry twenty-five pounds. He also noted she could stand, walk, or sit for up to six hours in an eight-hour day, and was otherwise unlimited. He stated Plaintiff's complaints were only partially credible because the severity of pain she alleged was not consistent with the minimal disc bulges shown in her MRI.

In September 2008, Plaintiff was examined by Dr. William Holland, who noted her gait and station testing were performed normally. In October 2008, Plaintiff began seeing Dr. Ford on Dr. Cyleman's referral. Plaintiff complained of pain consistently, and Dr. Ford changed her medicine regularly in an attempt to better relieve her symptoms. He prescribed Diclofenac, Tramadol, Gabapentin, Axert, and propoxyphene napsylate at various times in addition to other drugs. He diagnosed Plaintiff with asthma, endometriosis, osteoarthritis, migraines, allergies, and eczema. In February 2009, a lumbar nerve study was performed, which showed impairment in some of Plaintiff's nerves. She received steroid injections in March and April 2009. Plaintiff reported to Dr. Ford the injections did not help, and further adjustment was made to her medicine. This pattern continued throughout much of 2009 and into 2010. By February 2010, after months of varying medications, Dr. Ford added fibromyalgia to his assessment.

In January 2009, Dr. Reeta Misra completed a PRFC assessment similar to Dr. Allison's assessment. Dr. Misra similarly concluded Plaintiff could lift, carry, stand, or walk under the same conditions Dr. Allison noted, but also concluded Plaintiff should only occasionally climb ladders, stairs, ropes, or scaffolds, and only occasionally stoop, kneel, crouch, or crawl. Dr. Misra also stated Plaintiff's complaints were only partially credible.

In August 2009, Plaintiff returned to Dr. Cyleman for COPD as well as chronic pain and panic attacks. She was prescribed Klonopin. In October, she complained about the effects of Klonopin and her medication was changed.

In September 2009, Dr. Allison completed another PRFC assessment. His assessment was essentially unchanged, however, he agreed with Dr. Misra's conclusion Plaintiff should not climb or kneel. He also noted Plaintiff claimed fibromyalgia, and again concluded her complaints and evidence of her condition were in conflict. Dr. Allison's assessment was affirmed by Dr. Christopher Fletcher.

Throughout 2010, Plaintiff continued to seek care from Drs. Cyleman and Ford. Her medication was routinely changed as she continued to complain of symptoms associated with COPD, anxiety, and chronic pain. By September 2010 eczema was added to her assessment by Dr. Cyleman, and by November 2010 he added fibromyalgia. In November, Dr. Cyleman also completed a medical opinion form in which he stated Plaintiff suffered from chronic back and leg pain, fibromyalgia, bipolar disorder, and chronic eczema. He stated Plaintiff could sit for six hours a day, but for only thirty minutes at a time, could only infrequently lift or carry at most twenty pounds, and requires two hours of bed rest during a workday. She would also need to take an hour break for every three hours of work, and would suffer lapses in concentration or memory. He stated Plaintiff could never perform typing or fine manipulation due to her eczema and would be absent from work five days per month. He noted her complaints were consistent with her diagnoses.

B.  **Procedural Background**

Plaintiff filed an application for SSI and DIB in August 2009, and alleged she had been disabled since September 28, 2007. Her claim was denied, and she sought a hearing before an

4

Administrative Law Judge ("ALJ"). A hearing was held on January 20, 2011. At the hearing a vocational expert ("VE") testified no jobs would be available to Plaintiff if her testimony regarding her ailments was supported and reasonable, or if the ALJ fully credited Dr. Cyleman's opinion. The ALJ then asked the VE if jobs were available for an individual who could perform medium work but had moderate mental impairment. The VE noted Plaintiff's past relevant work in a warehouse and that unskilled, medium warehouse work would be possible for such an individual. He testified to a number of available jobs both in Tennessee and nationally. During the course of the hearing, Plaintiff argues the ALJ was hostile to both Plaintiff and her attorney. He made offhand remarks disparaging Plaintiff's doctors and belittling Plaintiff's complaints.

On January 27, 2011, the ALJ determined Plaintiff was not disabled. The ALJ analyzed Plaintiff's claim under the five-step framework outlined in 20 C.F.R § 404.1520(a)(4):

1. If claimant is doing substantial gainful activity, he is not disabled.
2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Nejat v. Commissioner of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). At steps one through four, the claimant bears the burden of proof. *Id.* However, at step five, the burden shifts to the Commissioner to identify jobs in the economy that the claimant could perform considering her impairments. *Id.*

5

The ALJ found Plaintiff had not engaged in any gainful activity since the alleged date of disability. He found she had severe impairments, including obesity; degenerative disc disease of lumbar spine and cervical spine; major depressive disorder recurrent, moderate; panic disorder with agoraphobia; history of substance abuse; and migraine headaches. The ALJ did not include Plaintiff's eczema, fibromyalgia, or COPD in this list because he concluded they were nonsevere. The ALJ noted these conditions either "resolved with no credible allegations of continued limitation" or produced "either minor or infrequent limitations" (Tr. 32). Plaintiff's eczema was never diagnosed as severe, and the COPD and fibromyalgia were never "properly diagnosed or treated" (*id.*). The ALJ then found Plaintiff did not have an impairment or combination of impairments that meet or medically equal the presumptively disabling impairments in 20 C.F. R. Pt. 404, Subpt. P, App'x 1. He concluded Plaintiff had the Residual Functioning Capacity ("RFC") to perform medium work that is unskilled and routine. This includes Plaintiff's past relevant work as a warehouse worker and order filler. Alternatively, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy.

Plaintiff sought review from the Appeals Council, which was denied. She then filed the instant action on January 4, 2012. In April 2012, Plaintiff filed a motion for judgment on the pleadings. She offered two grounds of error before the magistrate judge: (1) the ALJ should have deferred to Dr. Cyleman's opinion as Plaintiff's treating physician; and (2) the ALJ erred when he found her eczema and fibromyalgia were not severe impairments, and failed to apply *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815 (6th Cir. 1988) in regard to her fibromyalgia. The Commissioner disagreed, arguing substantial evidence supports the ALJ's decision, he properly considered Plaintiff's subjective claims, and he properly discounted Dr. Cyleman's opinion. In

response to the Commissioner's motion, Plaintiff also argued the ALJ displayed prejudice to Plaintiff and her physicians during the hearing, which "improperly color[ed]" his decision (Court File No. 16, Resp. Mtn. Summ. Jdg., p. 5).

The magistrate judge agreed with the Commissioner. First, the magistrate judge concluded the ALJ properly evaluated Dr. Cyleman's opinion under the treating physician rule by providing good reason to discount his opinion; namely, his statements regarding Plaintiff's limitations were not supported by the medical evidence or his own treatment notes and many of his diagnoses merely repeat Plaintiff's claims without subjecting them to testing or other verification. Moreover, the results of tests that were performed often conflict with her subjective claims. The magistrate judge additionally found, while the ALJ's behavior during the hearing was "unnecessary and inappropriate," which the ALJ has been accused of in past cases as well, his actions did not rise to the level of disqualifying bias. The magistrate judge found the ALJ did not err when he concluded Plaintiff's fibromyalgia and eczema were not severe impairments, and properly considered Plaintiff's credibility in her subjective claims of impairment. The magistrate judge therefore recommended Plaintiff's motion for judgment on the pleadings be denied and the Commissioner's motion for summary judgment be granted. Plaintiff timely objected to the R&R.

## II. STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y*

*of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is greater than a scintilla but less than a preponderance. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The substantial evidence standard presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

## III. DISCUSSION

Plaintiff makes three objections to the R&R: (1) the magistrate judge erred when she concluded the ALJ properly applied the treating physician rule; (2) the magistrate judge erred when she found the ALJ's comments did not establish disqualifying bias; and (3) the magistrate judge erred when she found the ALJ properly concluded Plaintiff's fibromyalgia and eczema were not severe impairments.

### A. Treating Physician Rule

The regulations implementing the Social Security Act require the ALJ generally to afford the opinion of a claimant's treating physician substantial deference. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Such deference, however, is due

only when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" before the ALJ. 20 C.F.R. § 404.1527(c)(2). If the ALJ decides not to accord the opinion of a treating physician controlling weight, the ALJ relies on a number of factors–including the length of the treatment relationship and frequency of evaluation, nature and extent of the treatment relationship, how well supported by medical evidence the treating physician's opinion is, the consistency of the treating physician's opinion with the record as a whole, and whether the treating physician is a specialist–to determine how much weight to give the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)-(6). Ultimately, the determination of disability is "the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 726 F.2d 431, 435 (6th Cir. 1985)).

Here, Plaintiff argues there is "nothing in the record" to support the ALJ's decision not to provide Dr. Cyleman's opinion controlling weight. Plaintiff concedes the examination in the record by Dr. Holland may conflict with Dr. Cyleman's conclusion, but argues his conflicting and cryptic opinion does not constitute "substantial evidence" on which the ALJ could properly base his decision.

While Plaintiff is certainly correct that disregarding the opinion of a treating physician and substituting instead the medical judgment of the ALJ is improper, the record indicates such substitution did not occur here. As the magistrate judge noted, the Commissioner provided a detailed explanation for his decision not to accord Dr. Cyleman's opinion controlling weight:

> As for the opinion evidence, great weight has generally been given to the opinions of the claimant's treating physicians, to the reports of the medical testing, and to the reports of the State Agency's consultants, except where lesser weight was given in a particular area as noted elsewhere in this decision. Such lesser weight is given to

9

> the report of her primary care physician, which is not properly supported by either his treatment notes or the overall medical evidence of record. Despite his conclusion that the claimant is limited to less than sedentary work due to chronic pain, there is nothing in the medical evidence of record to establish any impairment which could reasonably cause such pain. Many of his "diagnoses" appear to be taken from the claimant's allegations without verification or other testing, and to the extent that medical images or other tests are provided, her claims are not well supported. Accordingly, I give this opinion only some weight.

(*See* Tr. 35). In brief, the ALJ set forth a reasoned basis for rejecting Dr. Cyleman's opinion, *see Jones*, 336 F.3d at 477 (noting, where the treating physician's opinion is not supported by sufficient evidence, "the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection"), and the magistrate judge gave the ALJ's determination proper weight.

As the magistrate judge properly noted, Dr. Cyleman's treatment notes do not lend much to his statement regarding Plaintiff's work capability. Rather than detailing Plaintiff's diagnoses and treatment progress, his notes focus more on medication refills and changes. Nor do Dr. Cyleman's notes suggest he instructed Plaintiff to restrict her activities, such as using her hands, to the same extent he concludes she would be unable to work, such as her purported inability to type or frequently use her hands. Dr. Cyleman's opinion form itself is internally contradictory, listing Plaintiff's pain as moderate, but concluding she could only stand or walk for two hours in an eight-hour workday and would require two hours of bed rest during that time (Tr. 752). Dr. Cyleman also did not diagnose Plaintiff with fibromyaglia until the day he wrote his opinion, even in light of Plaintiff's imaging studies being normal, (*see, e.g.*, Tr. 395, 397, 408-09, 410, 647, 651), and no evidence Dr. Cyleman ever performed any other tests to verify Plaintiff's subjective complaints. The lack of verification is more noteworthy in light of the statements of multiple doctors Plaintiff's subjective complaints are not supported by the objective evidence of her condition. Dr. Cyleman's

10

opinion is thus not supported by sufficient clinical findings and is inconsistent with the evidence.[2]

Plaintiff claims Dr. Holland performed the only "physical consultative examination" in the record other than Dr. Cyleman's, and cannot be considered substantial evidence on which the ALJ was entitled to rely (Court File No. 21, Obj. R&R, p. 4) (citing *Miracle v. Celebreeze*, 351 F.3d 361, 378-79 (6th Cir. 1965)). Accordingly, Plaintiff argues, the ALJ should have deferred to Dr. Cyleman's opinion. However, the ALJ is only bound by a treating physician's opinions "if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) ("[A]n ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, and substantial evidence does not contradict it.") (citations omitted); *Taylor v. Comm'r of Soc. Sec.*, 91 F.3d 144, at *8 (6th Cir. 1996) (Table) ("A consultative examination, performed on a one-time basis is not substantial evidence in comparison to *competent* evidence from a treating physician.") (emphasis added). As the Court concluded above, Dr. Cyleman's opinion is not supported by sufficient clinical findings and is inconsistent with the record, and the ALJ properly explained his reasons for discounting the opinion. *See, e.g.*, *Williams v. Astrue*, 317 F. App'x 212 (3d Cir. 2009) (affirming the ALJ's decision not to credit the examining consultant's findings where they were in conflict with non-examining consultant's findings, objective testing such as X-rays and MRIs, a specialist's report recommending only

---

[2] This case is therefore distinguishable from *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988), which is cited in Plaintiff's original motion but not in her objections. There, the doctor's testimony was corroborated by "objective medical evidence to confirm the severity of the pain arising from the condition or that the objectively established medical condition is of such severity that it can be reasonably expected to produce disabling pain." *Id.* As noted, Dr. Cyleman's opinion is not so supported.

11

ibuprofen, and the examining consultant's own report). Contrary to Plaintiff's argument, the ALJ was only bound by Dr. Cyleman's opinion if the opinion itself was supported by sufficient clinical findings and was consistent with the evidence. Because Dr. Cyleman's opinion did not satisfy this test, the ALJ was not bound by his opinion.

Given the absence of a sufficiently supported opinion by a treating physician, the ALJ based his opinion on a prior consultative examination, multiple doctors' PRFC assessments, notes of examining physicians, and his own credibility determination. Such evidence is sufficient to uphold his determination Plaintiff is not disabled. *See, e.g.*, *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 31 (6th Cir. 2009) (finding substantial evidence supported the ALJ's decision disregarding the treating physician's opinion where the "ALJ carefully and thoroughly analyzed the evidence of McGrew's medical examinations and treatments, gave proper weight to state agency physicians, and accommodated changes in McGrew's medical condition."); *Wilson v. Halter*, 23 F. App'x 341, 342 (6th Cir. 2001) (affirming ALJ's decision where treating physician's opinions were inconsistent with the substantial evidence and non-examining physician's opinion was consistent with that evidence). Accordingly, Plaintiff fails to establish error on this ground.

### B. Disqualifying Bias

Plaintiff alleges the ALJ displayed disqualifying bias to Plaintiff's doctors during the hearing. As an initial matter, the Court notes the claim of bias was not raised in the administrative proceedings or in her initial motion before the magistrate judge, but was only raised in response to the Commissioner's motion for summary judgment. Such arguments are generally improper to consider. *See Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1039 (E.D. Mich. 2011) ("[I]t is improper to ask the Court to consider an argument not raised in the initial motion or presented to the

12

magistrate judge."); *see also United States v. Lopez-Medina*, 461 F.3d 724, 743 n.4 (6th Cir. 2006) (deeming an argument waived when it was not raised until a reply brief).

Were the Court to consider the argument it would also conclude, although the ALJ's behavior is troubling, it did not rise to the level of disqualifying bias. The Court "start[s] with the presumption that administrative adjudicators are unbiased and exercise their decision-making authority with honesty and integrity." *Miller v. Astrue*, No. 4:12-CV-4, 2012 WL 6737536, at *9 (E.D. Tenn. Dec. 5, 2012) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *see also Carelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (6th Cir. 2010) ("We apply the 'presumption that policymakers with decisionmaking power exercise their power with honesty and integrity,' and 'any alleged prejudice must be evident from the record and cannot be based on speculation or inference.'"). In order to overcome this presumption, "any claim of bias must be supported by a '*strong showing*' of bad faith." *Carelli*, 390 F. App'x at 436-37 (emphasis in original). The bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Miller*, 2012 WL 674756, at *9 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). The bias "must be personal, not judicial. . . . [and] arise 'out of the judge's background and association' and not from 'the judge's view of the law.'" *First Nat. Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1338 (6th Cir. 1987). Moreover, the Supreme Court has noted only two types of bias that raise constitutional due process concerns: (1) when a judge has "direct, personal, substantial pecuniary interest" in reaching a decision; and (2) when a judge is "personally embroiled with [a] contemnor" in a contempt case. *Railey v. Webb*, 540 F.3d 393, 400 (6th Cir. 2008). Additionally, the Court has identified prudential grounds of disqualification that include "[1] kinship, [2] personal

13

bias, [3] state policy, [and] [4] remoteness of interest." *Id.* (quoting *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Plaintiff points to the following colloquy between the ALJ and Plaintiff's counsel.

[ATTY]: Okay. Okay, Dr. Kyleman [phonetic] - -
ALJ: Who?
CLMT: Cylemen.
ATTY: Cylemen, I'm sorry, it's spelled C-O-Y –
ALJ: I know what it is, he's – everybody that sees him is disabled, eventually.
ATTY: Okay. Dr. Cylemen –
ALJ: And Dr. Ford, another happy supporter of people who claim disability. Pain clinic, Dr. Ford?
ATTY: Yes, your honor.
ALJ: You see Dr. Ford, right?
CLMT: Yes, your honor.
ALJ: Okay. Somehow people gravitate to these doctors. I guess that's – he's in Cleveland?
CLMT: Yes, your honor.
ALJ: There you have it. Small town, everybody knows who supports disability and gives out [INAUDIBLE].

(Tr. 63-64). Plaintiff also notes a consultative examiner was similarly dismissed by the ALJ, when he stated, "In addition to the foregoing, the DDS review physicians, based on a single examination by a non-acceptable medical source, one of the famous Biller [phonetic] family who doesn't have a doctorate . . . ." (*id.* at 77).[3]

---

[3] Plaintiff also points to the following selection.
ALJ: No, you don't get to talk when I'm talking, ever again.
ATTY: Okay.
ALJ: If you interrupt me again, I will do what's necessary to stop you from doing it.
ATTY: Yes, your honor.
ALJ: Because you seem to think that your every little thought that passes through your head is important enough to interrupt me - -
ATTY: Yes, your honor.
ALJ: - - and you do it repeatedly, and I repeatedly ask you not to do it. At what point do you think you can learn impulse control?
. . . .
ALJ: Secondly, it's wrong. I mean, perhaps because you've never practiced law in

14

Although the statements by the ALJ suggest he knew of the doctors at issue and their reputations, the statements do not rise to the level of bias requiring recusal. *See Damiano v. Matish*, 830 F.2d 1363, 1371 (6th Cir. 1987) ("Courts have been hesitant to find that generalized attitudes or opinions would serve to disqualify an individual from serving as an impartial decisionmaker."). Indeed, there is no question the opinion offered by the ALJ does not reflect a pecuniary interest in the case. Nor can the ALJ's opinion of the doctors be considered a part of his personal background. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986) (holding Alabama Supreme Court Justice's expressions of frustration with insurance companies did not establish disqualifying bias, although his pecuniary interest in a concurrent lawsuit did). More to the point, the Court already concluded the ALJ's decision to forgo giving Dr. Cyleman's opinion controlling deference under the treating physician rule was well supported by the record. Accordingly, not only has Plaintiff failed to establish some disqualifying interest in the case on the part of the ALJ, but she has also failed to establish any bias the ALJ had toward her doctor resulted in "an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Miller*, 2012 WL 674756, at *9.

Because Plaintiff forfeited this argument when she failed to raise it in her initial motion, and she fails to establish disqualifying bias on the merits, the Court finds no error on this ground. The

---

any other form. Have you ever done anything else besides this?
ATTY: I've practiced criminal law. I was a state attorney in Miami for a while.
ALJ: Well, did you - - did you - - did you go into court in front of the circuit court judge, and whenever a thought popped into your head, you just interrupted the proceedings, and said, 'I have something to say,' and then blurt it out?
ATTY: No, of course not, your honor.
ALJ: Well, then, don't do it here.

(Tr. 72-73). At one point, the ALJ was short with Plaintiff as well, although he was less abrasive (*id.* at 84-85).

Court does note, however, the ALJ's comments cause the Court concern.

## C. Fibromyalgia and Eczema

Plaintiff objects to the magistrate judge's conclusion the ALJ properly determined Plaintiff's fibromyalgia and eczema were not severe impairments.

The ALJ made this determination at step two of five-step analysis under 20 C.F.R § 404.1520(a)(4). The Sixth Circuit construes the step two analysis, at which the ALJ must determine whether the claimant has a severe impairment, as "'a *de minimis* hurdle' intended to 'screen out totally groundless claims.'" *Nejat*, 359 F. App'x at 576 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (quoting *Rogers*, 486 F.3d at 243 n.2).

The ALJ explained his decision finding fibromyalgia and eczema were not severe impairments in Plaintiff's case as follows.

> The other conditions mentioned in the claimant's medical records but not identified above as severe impairments are nonsevere, as they have all either resolved with no credible allegations of continued limitations to the claimant's activities, or the limitations produced are either minor or infrequent. This includes the claimant's reported eczema, which is not reported as severe in any medical evidence of record, and chronic obstructive pulmonary disease and fibromyalgia, which do not appear to have even been properly diagnosed or treated.

(Tr. 32). The magistrate judge agreed, concluding "a diagnosis of fibromyalgia based on acceptable diagnostic testing does not appear in the record" (Court File No. 20, p. 23).

The Court agrees. The "diagnoses" of fibromyalgia at issue, of Drs. Ford and Cyleman, are little more than notations in lists of disorders on physical assessments (Tr. 583, 587, 591, 757). As

16

the magistrate judge noted, it is unclear whether these constitute diagnoses, and the record does not contain any suggestion diagnostic testing was performed to confirm Plaintiff's subjective complaints. Indeed, the record is completely devoid of all mention of Plaintiff's fibromyalgia except for the minor notations noted above and Dr. Cyleman's medical opinion form. Although Plaintiff notes the record demonstrates she complained of pain and received medication, her treatment is not inconsistent with her other conditions, which the ALJ did conclude constituted severe impairments, including back pain associated with bulging discs. Moreover, a "mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The notes and reports in the record, beyond Dr. Cyleman's report which the Court has concluded was properly discounted by the ALJ, do not reflect any limitation on the Plaintiff as a result of fibromyalgia. *See id.* ("The doctors' reports are silent regarding any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain. We have upheld findings of no severe impairment in cases involving similar records."). With respect to Plaintiff's eczema, the record similarly does not establish the condition limited her ability to perform work activities. Although Plaintiff points to her diagnosis with eczema, such a diagnosis is insufficient on its own to establish the condition as severe. *See id.*; *see also Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) ("When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment.").

Further, even if the ALJ was in error when he failed to credit Plaintiff's fibromyalgia and eczema as severe, "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two

does 'not constitute reversible error.'" *Nejat*, 359 F. App'x at 577 (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Here, the ALJ considered "all symptoms" at step five, and specifically noted this "includ[ed] her severe and nonsevere physical impairments" (Tr. 33-34). He also discussed her complaints related to fibromyalgia (Tr. 34).

The Court concludes the ALJ's determination Plaintiff's fibromyalgia and eczema were not severe impairments is supported by substantial evidence. Were the Court to conclude the ALJ's determination was insufficiently supported, such a finding would not constitute reversible error. Accordingly, Plaintiff fails to establish error on this ground.

## IV. CONCLUSION

The Court has considered Plaintiff's objections after its complete review of the record, and has found it without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 20). The Court will **DENY** Plaintiff's motion for judgment on the pleadings (Court File No. 12), and will **GRANT** Defendant's motion for summary judgment (Court File No. 14). The Court will **AFFIRM** the Commissioner's decision and will **DISMISS** the case.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**